**CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, and Central States, Southeast and Southwest Areas Health and Welfare Fund, Plaintiffs,**

v.

**CENTRAL TRANSPORT, INC., et al., Defendants.**

Civ. No. 80–71872.

United States District Court, E. D. Michigan, S. D.

Sept. 19, 1981.

Russell N. Luplow, P.C., Russell N. Luplow, Diana L.S. Peters and Charles J. Taunt, of counsel, Bloomfield Hills, Mich., for plaintiffs.

Daniel F. Berry, Simpson, Moran & Burnett, Birmingham, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER

ANNA DIGGS TAYLOR, District Judge.

Plaintiffs, Central States, Southeast and Southwest Areas Pension Fund and Central States, Southeast and Southwest Areas Health and Welfare Fund, are employee benefit plans designed and maintained to serve as repositories of benefit fund contributions from companies with employees engaged in interstate trucking. The plaintiff funds will be referred to here as "Central States." Relying upon the jurisdictional grants of Section 301(a) of the Labor Man-

agement Relations Act of 1947, as amended (29 U.S.C. § 185(a)), and Section 502 of the Employee Retirement Income Security Act of 1974 (hereinafter referred to as "ERISA") (29 U.S.C. § 1132), Central States filed the instant complaint on behalf of its trustees, participants, and beneficiaries against 16 named defendants. The defendants, all companies engaged in interstate transportation of goods, will be referred to collectively as "Central Transport."

The gravamen of plaintiff's complaint is that Central Transport has failed to accurately report and remit benefit fund contributions for all employees covered by the collective bargaining agreements which establish the benefit plans. Central States has asked this court to issue an order permitting its auditors to conduct an independent verification of Central Transport's complete payroll records in order to determine whether the duties and status of each of its employees has been accurately reported by Central Transport. Without such an independent audit, Central States argues that it is unable to insure the financial integrity of the benefit funds and to fulfill its fiduciary obligations to the participants in and beneficiaries of the benefit plans.

On August 25, 1980, Central Transport filed a motion to dismiss plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Central Transport contends that Central States has neither a statutory nor a contractual right to the payroll data of all of its employees, without prior determination by the local union and the employer that particular individuals are covered by the collective bargaining agreement and thereby eligible as plan participants. Central Transport also argues that its obligation to protect the confidentiality of employee records prevents disclosure of data for those individuals who are not covered by the collective bargaining agreement.

Central States replied to the defendant's motion to dismiss, and at the same time filed its own motion for partial summary judgment, or in the alternative for a preliminary injunction to permit an audit of the defendant's payroll and employment records. The matter was set for hearing before the court. The parties then agreed on the record that the relevant facts are not in dispute and requested that the court treat their respective pleadings as cross-motions for summary judgment.

Having considered the oral and written arguments of the parties, partial summary judgment in favor of the plaintiff Central States is hereby granted. As is further discussed below, this court finds that the plaintiff Central States has both a contractual right and a statutory obligation under the circumstances to independently verify the status and duties of all individuals employed by Central Transport in order to insure that proper benefit contribution payments are being made. The court therefore orders that Central Transport provide to the audit representatives of Central States all of the documentation requested and that the audit procedure undertaken by Central States be allowed to continue.

Each of the defendant companies are parties signatory to a collective bargaining agreement entitled the "National Master Freight Agreement" and to certain supplementary agreements with various local union affiliates of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America. The National Master Freight Agreement undisputedly obliges an employer to make weekly health and welfare, and pension contributions to a fund jointly administered by the union and the employer for each employee "covered by the agreement." (National Master Freight Agreement, April 1, 1979 to March 31, 1982, Article 60 and Article 61). Article 60 and Article 61 [1] of the National Master Freight Agreement specify the amount of weekly health and welfare and pension benefits to be paid for each covered employee. These provisions further authorize the Cen-

---

1. Article 60 of the National Master Freight Agreement applies to "Health and Welfare Benefits" and Article 61 applies to the "Pension Plan." The language from each article which is significant to this court and which is quoted in its opinion is identical.

tral Transport employers to enter trust agreements which set forth the terms and conditions under which the benefit funds are to be administered. Significantly under Article 60 and Article 61, Central Transport agreed to ratify all action taken or to be taken by the benefit plan trustees within the scope of their authority. Thus Article 60 states:

By the execution of this Agreement, the Employer authorizes the Employers' Associations which are parties hereto to enter into appropriate trust agreements necessary for the administration of such Fund, *and to designate the Employer Trustees under such agreement, hereby waiving all notice thereof and ratifying all actions already taken or to be taken by Trustees within the scope of their authority.* (Emphasis added).

In addition to the National Master Freight Agreement and to the Trust Agreements, Central Transport has undisputedly executed participation agreements applicable to the plaintiff Pension Funds and joint applications applicable to the plaintiff Health and Welfare Funds, which also confirm the defendant's obligation to be bound by all actions of the trustees in administering the Central States funds. Paragraph one of the Pension Fund participation agreement reads as follows: [2]

*The Union and the Employer herein agree to be bound by,* and hereby assent to, all of the terms of the Trust Agreement creating said CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, all of the rules and regulations heretofore and hereafter adopted by the Trustees of said Trust Fund pursuant to the said Trust Agreement, and *all of the actions of the Trustees in administering such Trust Fund in accordance with the Trust Agreement and rules adopted.* (Emphasis added)

Clearly, the unambiguous language of the collective bargaining agreement, the joint application and the participation agreement executed by every Central Transport employer, binds Central Transport to the terms of the Trust Agreement and to the actions of the Trustees in administering the benefit funds.

The Trust Agreement [3] itself delineates Central Transport's obligation to plan participants and beneficiaries and sets out the precise scope of the Trustees' power to administer the benefit funds. The court finds that the clear language of the Trust Agreement accords Central States in its capacity as Trustee the right to conduct an audit of all payroll data for those individuals whom Central Transport employs, regardless of whether the defendant considers them to be covered by the collective bargaining agreement.

Article II of the Trust Agreement establishes the Central States' funds, and creates a Board of Trustees consisting of equal numbers of employer and union representatives. (Trust Agreement Article II, Sections 1 and Section 2). Each employer is obligated to make "continuing and prompt payments to the Trust Fund as required by the applicable collective bargaining agreement..." (Trust Agreement Article III, Section 1). Collection of employer contributions and enforcement of payment obligations is delegated to the Trustees. (Article III, Section 4).

Article III, Section 5 of the Trust Agreement requires both the employer and the union to furnish employment records and personal background information of "employees" to the Trustees upon request. In pertinent part, Article III, Section 5 states:

Each Employer shall promptly furnish to the Trustees, upon reasonable demand,

---

**2.** A provision similarly binding the union and Central Transport to the Trust Agreement and to all the actions of the Trustees in administering the Health and Welfare fund is contained in paragraph one of the joint application as well.

**3.** The Revised and Amended Trust Agreement for Central States, Southeast and Southwest Areas Pension Fund and the Revised and

Amended Trust Agreement for Central States, Southeast and Southwest Areas Health and Welfare Fund will be referred to collectively as the "Trust Agreement." Unless noted differently the provisions cited and the language quoted by the court are identical in each agreement.

the name and current addresses of its Employees, their Social Security numbers, the hours worked by each employee (and past industry employment history in its files)[4] *and such other information as the Trustees may reasonably require in connection with the administration of the Trust. The Trustees may, by their representatives, examine the pertinent records of each Employer at the Employer's place of business whenever such examination is deemed necessary or advisable by the Trustees in connection with the proper administration of the Trust. . .* (Article III, Section 5). (Emphasis added)

Traditionally, the Central States Funds have operated on a self-reporting basis, which required the employer to initially establish a base group of employees entitled to weekly contributions and then to inform the plaintiff monthly of any fluctuations in the employment status of individuals covered by the collective bargaining agreement. Central States relies upon the status reports of defendant employers to compute an invoice statement which it forwards to Central Transport. Thus, when the employer reports the termination or layoff of an individual formerly covered by the collective bargaining agreement, Central States will adjust its records and reduce the defendant's invoice to reflect the reported change. Conversely, when an employer reports the addition of new employees, Central States will increase the invoice by an amount which corresponds to the weekly contribution figure multiplied by the number of weekly hired employees.

On December 5, 1979, Central States mailed the following letter to Central Transport:

Public Law, 93–406, commonly called ERISA requires us as the Fiduciary to make periodic reviews of participating employer contributions for the benefit of Plan Participants and their Beneficiaries.

We would like to make this review at your offices beginning the week of November 26, 1979, with a representative of Local Union No. 124.

This review will encompass the following:

1. Determination of eligible Plan Participants covered by Collective Bargaining Agreements.

2. Verification of member history contributions.

3. Reconciliation of any account balance differences.

The records required will be the documents which support the recording of time worked and payroll computation and recording for all collective bargaining unit employees.

Our findings will be discussed with you at the completion of the review and confirmed in a written report.

During the course of the audit, Central Transport provided some payroll records for those employees whom it had determined were covered by the collective bargaining agreement. (See affidavit of Robert E. Sigler, individually and as Director of Payroll of each defendant company.) However, based upon the contention that approximately 60% of its employees were not covered by the collective bargaining agreement and therefore not eligible for benefit contribution, Central Transport refused to provide tax forms and complete payroll ledgers as requested by the Central States' auditors. The audit was terminated before completion on March 28, 1980, after the audit staff was asked to leave the Central Transport premises. Nevertheless, affidavits of two auditors engaged in the examination of Central Transport's record attest to the fact that reporting discrepancies and contribution deficiencies were discovered. (The affidavit of Juanito P. Pasia notes the discovery of reporting discrepancies relative to four specifically named individuals. In his affidavit, Manager of Central States' Field Employer Audit Department, John P. O'Sullivan, states that based upon preliminary and incomplete audit findings he believes the defendants are collectively in-

---

**4.** This provision is not contained in Article III, Section 5 of the Health and Welfare Fund Trust agreement.

debted to Central States for at least $172,-303.50.)

Central Transport relies upon a narrow interpretation of the term "Employee" as used in the Trust Agreement to reject Central States' demand for full payroll data and records of all individuals employed by Central Transport. Specifically, Central Transport points out that Article I, Section 3 of the Trust Agreement defines an employee as "a person who is employed under the terms and conditions of the collective bargaining agreement . . . and on whose behalf payments are required by such collective bargaining agreement." Central Transport alleges that 60% of its employees are not employed under the terms and conditions of the collective bargaining agreement and that the Trustees therefore have no obligation or right to inspect the employment data of these individuals.

▮ The court finds that the Trust Agreement defines the term "Employee" far more broadly than Central Transport would concede, and that the defendant is therefore obliged to turn over complete payroll data for all individuals as demanded by Central States pursuant to Article III, Section 5 of the Trust Agreement. In the first place the definition of employee contained in Article I is not intended to be exclusive. Rather Article I, Section 3 states that the term "Employee" shall include any one of five alternative definitions; it does not limit the definition in any further way. Moreover, Article I, Section 3(e) is particularly broad in that it states:

> In all instances, the common law test, or the applicable statutory definition, of master-servant relationship shall control employee status.

It is apparent to the court that all individuals on an employer's payroll, whether covered by a collective bargaining agreement or not, qualify under the common law test of employee status. Consequently, the unambiguous language of the Trust Agreement itself accords Central States the right to examine the employment and payroll data of all individuals on the Central Transport payroll under Article III, Section 5. The court further finds that the independent audit which the plaintiffs are pursuing falls squarely within the language of Article III, Section 5, which permits demand of "such other information as the Trustees may reasonably require," including examination of the "pertinent records of each Employer" as is "deemed necessary or advisable by the Trustees in connection with the proper administration of the Trust."

In addition to the language of Article III, Section 5, the Trust Agreement contains a number of other provisions which empower the Trustees to undertake an independent audit of the payroll records of all Central Transport employees. Thus Article III, Section 4 states:

> The Trustees, or such committee of the Trustees as the Board of Trustees shall appoint . . . shall have the power to demand and collect the contributions of the Employers to the Fund. Said Board of Trustees shall take such steps, including the institution and prosecution of, and intervention in, any legal proceedings as the Trustees in their discretion deem in the best interest of the Fund to effectuate the collection or preservation of contributions or other amounts which may be owed to the Trust Fund . . . (Article III, Section 4.)

Article IV, Section 9 of the Trust Agreement authorizes the Trustees to formulate and promulgate any and all rules and regulations which they deem necessary or desirable to facilitate the proper administration of the Trust. This provision also states that all such rules and regulations are binding upon the parties to the Trust Agreement, the Union and Central Transport.

Article IV, Section 14(e) empowers the Trustees, "to do all acts, whether or not expressly authorized herein, which the Trustees may deem necessary or proper for the protection of the property held hereunder." Each of these Trust Agreement provisions are broad enough to reasonably accommodate the plaintiff's demand that Central Transport submit to a complete audit of its payroll records and data.

■ The precise scope of the trustee's power is to be found in the trust agreement, and the courts are traditionally unwilling to interfere with a trustee's decision regarding benefit fund administration. *Rehmar v. Smith*, 555 F.2d 1362 (9th Cir. 1977); *Marsh v. Greyhound Lines*, 488 F.2d 278 (5th Cir. 1974). Consequently, in the absence of fraud, action by a trustee taken pursuant to the powers accorded in the trust agreement will not be overturned unless the court finds it to be arbitrary and capricious. *Rehmar v. Smith, supra; Danti v. Lewis*, 312 F.2d 345 (D.C.Cir.1962); *Taylor v. Bakery and Confectionary Union and Industry International Welfare Fund*, 455 F.Supp. 816 (E.D.N.C.1978).

■■ The plaintiff, Central States, argues that an audit is necessary in order to insure the financial integrity of the benefit funds. As Central States has pointed out, the funds are liable to participants and beneficiaries whether a particular employer makes the proper contribution or not. See ERISA, Sections 202(a)(1)(A)(ii) and 203(a)(2) [29 U.S.C. § 1052(a)(1)(A)(ii), 29 U.S.C. § 1053(a)(2)], 29 CFR 56462, December 28, 1976, Section 2530.200b–2(a). In light of the broad grants of discretion contained in the Trust Agreement the court finds that the decision of the Central States Trustees to conduct a complete audit in order to verify Central Transport's reporting accuracy and payment compliance is not arbitrary and capricious. Accordingly, the data which Central States demands must be produced by contractual obligation, unless Central Transport is correct that the overriding considerations of confidentiality prohibit the disclosure of non-unit employee data.

In order to assess Central Transport's claims of confidentiality the court has examined the line of cases which consider an employer's obligation to disclose information to union representatives during the collective bargaining process. Beginning with *N. L. R. B. v. Truitt Mfg. Co.*, 351 U.S. 149, 76 S.Ct. 753, 100 L.Ed. 1027 (1956), the courts have recognized the general obligation of an employer to provide the union with the information it needs to properly perform as a bargaining representative. Particularly when the requested information concerns non-unit employees the courts have examined the question of whether the information being sought is relevant to a legitimate union need. *N. L. R. B. v. Rockwell-Standard Corp.*, 410 F.2d 953, 957 (6th Cir. 1969). *Curtiss-Wright v. N. L. R. B.*, 347 F.2d 61 (3rd Cir. 1965). The general approach has been to apply a liberal discovery standard to the issue of relevancy in order to evaluate each case on its facts. See *N. L. R. B. v. Acme Industrial Co.*, 385 U.S. 432, 87 S.Ct. 565, 17 L.Ed.2d 495 (1967); *Brazos Electric Power*, 101 LRRM 1003 (NLRB, 1979), enf'd 615 F.2d 1100 (5th Cir. 1980).

■ Central Transport has failed to show that the information which Central States demands is not relevant to the independent audit being proposed. The court has already noted that the Trustees may reasonably require the payroll data information under the express terms of the Trust Agreement and the collective bargaining agreements between Central Transport and the union. Drawing upon the analogy to the collective bargaining process cases involving unions and employers, the court notes that if the union itself is entitled to relevant payroll information of non-unit employees, the plaintiff Trustees are similarly entitled to such disclosures. Those cases which Central Transport cites to support its confidentiality argument, concerning the disclosure of testing data, are not applicable to the payroll information which Central States seeks. In arriving at its conclusions, the court is mindful of the fact that Central States has repeatedly stated that confidential payroll data will not be copied or removed from the Central Transport premises once the auditors have satisfied themselves that particular individuals are not performing unit work. Bearing the plaintiff's assurances in mind, the court finds that the defendant's interest in protecting the confidentiality of its non-unit employee records does not outweigh the Trustees' right to access to this information.

■ Not only does the plaintiff have a contractual right to the information it demands, but a number of statutory provisions within ERISA also mandate that Central States be allowed to pursue a complete audit in order to fulfill its non-delegable duty as a fiduciary under Section 405 (29 U.S.C. § 1105). By enacting ERISA, Congress recognized the increasing economic impact which employee benefit plans have upon the well-being and security of millions of employees and their dependents. 29 U.S.C. § 1001(a). Consequently, it is the declared policy of the Act to protect the interest of participants in employee benefit plans, *inter alia,* by requiring the disclosure and reporting to participants and beneficiaries of financial information and by establishing standards of conduct, responsibility and obligation for fiduciaries of employee benefit plans. 29 U.S.C. § 1001(b).

Specifically, ERISA imposes upon a fiduciary the obligation to discharge its duties with the care, skill, prudence and diligence of a prudent man. Thus Section 404, (29 U.S.C. § 1104) states:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and (a) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries . . . with care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims . . .

There is no question but that trustees are fiduciaries within the meaning of the Act. 29 U.S.C. § 1002(14).

■ ERISA legislative history indicates that the Congressional drafters refrained from delineating a precise list of powers and duties to be undertaken by fiduciaries, but rather intended that fiduciaries be governed by the principles applicable to the common law of trusts. Introducing the conference report, Senator Harrison A. Williams, Jr., Chairman of the Senate Committee on Labor and Public Welfare commented:

> . . . [T]he legislation imposes strict fiduciary obligations on those who have discretion or responsibility respecting the management, handling, or disposition of pension or welfare plan assets. The objectives of these provisions are to make applicable the law of trusts; to prohibit exculpatory clauses that have been used in this field; to establish uniform fiduciary standards to prevent transactions which dissipate or endanger plan assets; and to provide effective remedies for breaches of trust. 3 United States Code and Administrative News, 1974, pp. 4639, 5186.

The court has already noted that under the common law a trustee's decision in administering a benefit fund will not be disturbed unless it is arbitrary and capricious. Given the fiduciary nature of the trustee's duties to preserve and maintain the assets entrusted to it, the court finds that ERISA mandates that Central States be allowed to pursue a complete audit of the defendant Central Transport's payroll records and employment data in order to verify whether employment status has accurately been reported and benefit contributions properly made.

■ Finally, Central Transport argues that the plaintiff has no right to examine the records of non-unit employees because the collective bargaining agreement contemplates arbitration of coverage questions. Central Transport posits that until an individual is determined to be a member of the bargaining unit, he is not eligible for fund benefits or participation. As only the union and the employer can settle questions of unit membership under the grievance procedure provision, Central Transport believes the plaintiff is precluded from inspecting the records on non-unit employees. The court rejects this argument for three reasons. In the first place, the Trust Agreement and accompanying collective bargaining agreements between the union and the employer all contemplate and ratify the Trustee's broad discretion to undertake all acts which Central States deems necessary and proper for the administration of the benefit funds. Secondly, since neither Cen-

tral States nor its Trustees are parties to the collective bargaining agreements between the union and Central Transport, the contract grievance provisions are not applicable and can provide no recourse to plaintiffs herein. *See United Steelworkers of America v. American Manufacturing Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). Third, the court does not agree with Central Transport's contention that the audit verification procedure amounts to a dispute over unit membership. If and when such a dispute arises, nothing in this opinion prevents the arbitration of a union membership question between the union and the employer. However, this contractual grievance procedure cannot substitute for the Trustees' right and obligation to conduct an independent audit in order to insure the financial integrity of the benefit funds charged to their administration.

Consequently, defendant's motion for summary judgment is denied and plaintiff's motion for partial summary judgment is granted consistent with this memorandum opinion and order.

IT IS SO ORDERED.