**CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, etc. et al., Appellants,**

v.

**CRST, INC., Appellee.**

**No. 80–1249.**

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 8, 1980.

Decided March 9, 1981.

Paul A. Zoss, argued, Myers, Knox & Hart, Des Moines, Iowa, for appellants.

Guy H. Wendler, argued, Robert E. Konchar, Moyer & Bergman, Cedar Rapids, Iowa, David E. Jerome, argued, Sullivan & Leavitt, P. C., Northville, Mich., for appellee.

Before BRIGHT and STEPHENSON, Circuit Judges, and REGAN,* Senior District Judge.

REGAN, District Judge.

This appeal is from a judgment dismissing on the merits the claims of the Central States Southeast and Southwest Areas Pension Fund and the Central States Southern and Southwest Areas Health and Welfare Fund to inspect certain employment and earnings records on all the employees of CRST, Inc. We affirm.

The basic facts are not in dispute. The narrow issue, determined adversely to the Funds by the district court, is whether CRST is required to make available to plaintiffs for audit purposes the employment and earnings records of *all* CRST employees including employees who may not be covered by a collective bargaining agreement requiring contributions to the Funds on their behalf.

CRST, a common carrier by motor vehicle, is a party to collective bargaining agreements, each of which, inter alia, authorizes the execution of appropriate trust agreements necessary for the administration of the Funds and obligates CRST to contribute to the Funds a specified sum for each employee covered by said agreements. Certain of CRST's employees (both union and non-union) are included in the bargaining units and so are "covered" by the collective bargaining agreements. Others of its employees are not so covered. The present controversy relates to the latter group of employees. There is no evidence that CRST is delinquent in making the required contributions nor was there a controversy respecting the coverage of any particular employee.

Pursuant to the collective bargaining agreements, the names of the employees in a particular bargaining unit are set forth on a seniority list which is required to be posted at the employees' place of employment. The seniority lists contain the job locations, job descriptions, names and start dates of the employees listed thereon. These lists are used as a basis for determining "covered" employees. Any alleged errors in the seniority lists are subject to complaints filed by the affected employees or the union stewards. Any such complaints are to be resolved in accordance with the grievance procedures contained in the applicable collective bargaining agreement.

In addition, pursuant to a "Billing System Guide" issued by the Funds, a monthly billing report is submitted to each employer setting forth the names and amounts due on each bargaining unit employee. The local Union is furnished a copy of each billing statement. Periodic audits of the records of contributing employers are conducted by the Funds and a post-audit report is submitted to both the employer and the local Union. All reports and attendant documentation generated by the audits are placed in a file to which the Union has access.

The Funds owe their existence to the collective bargaining agreements which, as noted supra, require the employer to contribute an agreed sum only for each employee "covered" by the agreements. In the event of any dispute between the Union

* The Honorable John K. Regan, United States Senior District Judge for the Eastern District of Missouri, sitting by designation.

and the employer as to whether a particular employee is "covered," grievance procedures may be utilized. Although, as the district court stated, the Funds, which are third party beneficiaries of the agreements, are not authorized to resort to the grievance machinery nor to compel the Union to do so on its behalf, it would appear that in the event a dispute should arise respecting coverage, the duty of fair representation would impel the Union to invoke the grievance machinery if the Funds were to request such action.

With this background, we turn to the resolution of the insistence of the Funds that they be permitted to examine the payroll and other records for all of CRST's employees, irrespective of whether some of the employees whose records were sought to be examined were not "covered." Whether such a broad right of inspection exists is to be determined solely on the basis of the contractual provisions spelled out in the collective bargaining agreements and the implementing trust agreements or necessarily implied therefrom, together with those contained in the Employee Retirement Income Security Act of 1974 (ERISA).

To the extent applicable each of the trust agreements provides:

"Each Employer shall promptly furnish to the Trustees, upon reasonable demand, the names and current addresses of its *employees*, the social security numbers, the hours worked by each *employee* and past industry employment history in its files and such other information as the Trustees may reasonably require in connection with the administration of the Trust." Article III, Section 5. (Emphasis added).

This provision is the sole basis for the contention that the Funds have a contractual right of inspection of all employee records.

The term "employee" as used in the foregoing provision of the trust agreements is not all-inclusive, and does not comprehend *all* employees. The term is defined as follows in Article I of the agreements:

"Section 3. Employee—The term "Employee" as used herein shall include:

(a) *A person who is employed under the terms and conditions of a collective bargaining agreement entered into between an Employer as herein defined and a Union as herein defined, and on whose behalf payments are required by such collective bargaining agreement or applicable law to be made to the Fund by the Employer; or*

(b) All persons employed by the Union, upon being proposed by the Union and after acceptance by the Trustees; and as to such Union personnel the Union shall be considered an Employer solely for the purposes of contributions within the meaning of this Agreement and Declaration of Trust and shall, on behalf of such personnel, make payments to the Trust at the times and at the rate of payment equal to that made by any other Employer who is a party to the Trust for the same benefits; or

(c) All persons employed by the Central States, Southeast and Southwest Areas Pension Fund or Central States, Southeast and Southwest Areas Health and Welfare Fund upon acceptance by the Trustees; and as to such Trust personnel the Trustees shall be deemed an Employer, solely for the purpose of contributions, within the meaning of this Agreement and Declaration of Trust and shall, on behalf of such personnel, make payments to the Trust at the times and at the rate of payment equal to that made by any other Employer who is a party to the Trust for the same benefits."

\* \* \* \* \* \*

(Emphasis added).

■ We are aware that the term "shall *include*" is not necessarily synonymous with the term "shall *mean*." It is frequently used as a term of enlargement. In our judgment, it was so used as to those persons described in subsections (b) and (c), that is, as to the employees of the Union and trust fund personnel. However, it is obvious that

insofar as subsection (a) is concerned, the definition of "employee" far from enlarging its meaning clearly *limits* it to "covered" employees, else the definition would serve no purpose whatever. It follows that the right of inspection is expressly limited to the records of "covered" employees. We have not overlooked the general language in Section 3, "and such other information as the Trustees may reasonably require in connection with the administration of the Trust." In the context, this language can only refer to information reasonably required as to "*covered*" employees additional to the records specifically listed.

The Funds argue that absent an examination of the scope they requested, it is impossible for them to determine the existence of coverage, vel non, for each employee. We cannot rewrite or amend the contract. As we have noted, the seniority lists are subject to scrutiny not only by the Union but also by the employees who are directly concerned with their accuracy. Of importance is the fact that the lists are used in determining whether or when an employee works as well as the amount of his compensation. Hence, there is no reasonable likelihood that an employer could evade his obligation to contribute the agreed-upon sum for all covered employees by omitting the name of any such employee from a seniority list.

ERISA does not expand the right of inspection beyond that contractually agreed to. The fiduciary obligations mandated by ERISA are owed only to participants and beneficiaries. 29 U.S.C. § 1104. Participants are those employees who are or who may become eligible to receive a benefit from an employee benefit plan. 29 U.S.C. § 1002(7). Non-covered employees, that is, those employees who are not "employed under the terms and conditions of a Collective Bargaining Agreement," neither are nor can be participants or beneficiaries.[1]

The district court correctly held that employee coverage is to be determined solely under the provisions of the collective bargaining agreements. Absent such determination, the Funds have no right, express or implied, to have access for audit purposes to *all* employee records.

The judgment is affirmed.

1. We note that if there is any reasonable basis for believing that CRST has failed to report any "covered" employee, the Secretary of Labor has the power to make an investigation and to make available to the Trusts any information resulting from the investigation. 29 U.S.C. Section 1134(a)(1) and (2). We add that criminal sanctions are also available in the event an employer knowingly fails to disclose or conceals facts required by ERISA to be published or certified to the administrator of an employee benefit or pension plan. 18 U.S.C. § 1027.