CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND and Central States, Southeast and Southwest Areas Health and Welfare Fund, Plaintiffs-Appellees,

v.

CENTRAL TRANSPORT, INC., et al., Defendants-Appellants.

No. 81–1757.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 26, 1982.

Decided Jan. 20, 1983.
Rehearing and Rehearing En Banc Denied April 8, 1983.

Patrick A. Moran (argued), Simpson, Moran & Burnett, David M. Black, Birmingham, Mich., for defendants-appellants.

Russell N. Luplow (argued), Diana L. S. Peters, Bloomfield Hills, Mich., for plaintiffs-appellees.

Before LIVELY and KENNEDY, Circuit Judges, and WILHOIT,* District Judge.

CORNELIA G. KENNEDY, Circuit Judge.

Central Transport, Inc., et al. (Transport)[1] appeals from an order of the District Court, 522 F.Supp. 658, holding that Central States, Southeast and Southwest Areas Pension Fund and Central States, Southeast and Southwest Areas Health and Welfare Fund (the Funds) have a statutory and contractual right to inspect the records of *all* of Transport's employees to determine whether they are entitled to be participants in the Funds so that Transport is responsible for making contributions to the Funds on their behalf.

The Funds were created by trust agreements between multi-employer associations to which Transport belongs and the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, and its various locals (the Union). Transport has assented to and agreed to be bound by the trust agreements creating the respective Funds. The Funds are employee benefit plans subject to the Employee Retirement Income Security Program Act (ERISA), 29 U.S.C. §§ 1001–1461.

Transport is a signatory to the National Master Freight Agreement and/or supplemental, individual agreements to which the Union is a party. The collective bargaining agreements require that Transport make payments to the Funds on behalf of employees covered by the collective bargaining agreements. An employee is covered by

---

* Honorable Henry R. Wilhoit, Jr., United States District Court for the Eastern District of Kentucky, sitting by designation.

1. Appellants are 16 corporate entities either directly engaged in the transportation of goods in interstate commerce or otherwise supportive of such transportation. They are collectively styled "Transport" since all are represented by the same counsel and collectively raise identical issues.

the collective bargaining agreements if engaged in a job classification described in the National Master Freight Agreement and/or supplements. Union membership is not a prerequisite to coverage so that both union and non-union employees are covered if their job classification is so described. These employees are eligible for pension, health and welfare benefits from the Funds.

A substantial percentage of Transport's employees are not covered by the collective bargaining agreements. Transport is not required to make contributions to the Funds with respect to these individuals. Instead, Transport makes contributions to a company benefit pension plan which is also an ERISA plan. The present controversy relates only to an audit sought by the Funds.

In January 1980, the trustees of the Funds authorized and commenced an audit of Transport to verify the accuracy of Transport's reporting of covered employees. Concern over the accuracy of Transport's reporting was triggered by the Funds' receipt of contributions for four employees of Transport who were on the office payroll as well as instances of apparent underreporting for covered employees. In response, the Funds sought quarterly reports, insurance exception listings and other information which included many documents relating to non-covered employees outside of the scope of the collective bargaining agreements as well as those covered employees within its scope. When Transport refused to disclose information about Transport employees without a prior determination by Transport and the Union that they were actually covered by the collective bargaining agreements, the Funds terminated the audit.

The Funds instituted this action seeking a preliminary injunction to require Transport to provide the Funds with the names, current addresses and social security numbers of *all* of its employees, *i.e.* covered and non-covered, along with the hours worked and verification documents. The Funds argued it had a statutory and contractual right to inspect the records of *all* of Trans-

port's employees. The statutory right is allegedly derived from ERISA, 29 U.S.C. §§ 1102–1105, which delineates trustee responsibilities and powers, and 29 U.S.C. § 1059 which imposes a duty of responsibility and record keeping on employers with respect to all employees who are participants in an employee benefit plan. The contractual right is allegedly derived from Article III, section 5 of the trust agreements, which provides for the production of records and Article IV of the trust agreements which sets forth the trustees' powers and duties. The Funds also asserted a common law right to all records under general fiduciary principles. Transport contested these assertions on the grounds that the audit of all employee records was outside of the statutory provisions of ERISA and the contractual agreements of the parties as embodied in the collective bargaining agreements and the trust agreements. Transport raised the confidentiality of non-covered employee records as a further defense.

These legal issues were presented to the District Court in the form of cross-motions for summary judgment. The District Court granted the Funds' motion for summary judgment on the grounds that covered and non-covered employees of Transport were within the definition of "employee" contained in the trust agreements and that the audit was authorized by ERISA and the contractual agreements between the parties. This decision allowed the Funds complete access to the records of all of Transport's employees. Transport appealed and the District Court granted a stay of its order pending appeal.

To the extent the District Court considered the audit of the records of all of Central's employees to be sanctioned by statute, the question is one of law and is freely reviewable. *Nash v. Farmers New World Life Insurance Co.,* 570 F.2d 558 (6th Cir.), *cert. denied,* 439 U.S. 822, 99 S.Ct. 89, 58 L.Ed.2d 114 (1978). The constructions of the collective bargaining agreements and the trust agreements also raise issues of law and are freely reviewable. *See Industrial*

*Equipment Co. v. Emerson Electric Co.,* 554 F.2d 276, 283 (6th Cir.1977). The propriety of the trustees' decision to order an audit, however, once a determination has been made that such an audit is authorized under the parties' agreements as a matter of law, is limited to a determination of whether the trustees' decision is arbitrary, capricious or in bad faith. *Van Gunten v. Central States, Southeast and Southwest Areas Pension Fund,* 672 F.2d 586 (6th Cir.1982).

## I.  Statutory Right

The Funds allege that they have a statutory right to audit the records of all of Transport's employees under ERISA, 29 U.S.C. §§ 1102–1105. It is a declared policy of ERISA to protect the interests of participants in employee benefit plans by requiring the disclosure and reporting to participants and beneficiaries of financial information and by establishing standards of conduct, responsibility and obligation for fiduciaries of employee benefit plans. *Id.* § 1001(b). ERISA imposes special responsibilities on the trustees who administer employee benefit plans and the employers, such as Transport, who contribute to them. Trustees have the discretion and authority to manage and control trust assets. *Id.* §§ 1102–1103. They are held to the high standards of fiduciaries, *id.* § 1104, and are governed by principles applicable to the common law of trusts. [1974] U.S.Code Cong. & Ad.News 4639, 5083.

A trustee's duties as a fiduciary, however broad, are nevertheless limited in two significant respects. Under 29 U.S.C. § 1104(a)(1), a fiduciary must "discharge his duties with respect to a plan *solely in the interest of the participants and beneficiaries ....*" (emphasis added). Non-participants and non-beneficiaries are outside the scope of this statutorily imposed duty. In addition, 29 U.S.C. § 1104(a)(1)(D) imposes the further restriction that a fiduciary discharge his duties *"in accordance with the documents and instruments governing*

*the plan* insofar as such documents and instruments are consistent with the provisions of ... [ERISA]."[2] (emphasis added) The documents and instruments governing the plan include the collective bargaining agreements entered into between Transport and the Union and the trust agreements.

■ The statutory provisions of ERISA do not, in themselves, impose upon trustees the duty to audit records of all of Transport's employees to independently verify whether any given employee is covered by the collective bargaining agreements. Instead, the provisions of ERISA require reference to the terms of the collective bargaining agreements and the trust agreements to determine who are the participants and beneficiaries to whom statutorily imposed duties are owed and to the terms of the trust agreements to determine what the precise nature of those duties are. Therefore, the District Court erred as a matter of law in finding the audit to be statutorily authorized.

## II.  Contractual Duties

The Funds argue that Article III, section 5 of the trust agreements, gives it a contractual right to audit the records of all of Transport's employees. This provision states:

> Production of Records—Each Employer shall promptly furnish to the Trustees, upon reasonable demand, the names and current addresses of its Employees, their Social Security numbers, the hours worked by each Employee and *such other information as the Trustees may reasonably require in connection with the administration of the Trust.* The Trustees may, by their representatives, examine the pertinent records of each Employer at the Employer's place of business *whenever such examination is deemed necessary or advisable by the Trustees in connection with the proper administration of the Trust.* (emphasis added)

---

**2.** The documents and instruments covering the plan, however, must not be inconsistent with other ERISA provisions, *i.e.,* they cannot excuse a trustee's breach of his fiduciary duties, permit a trustee to engage in a transaction prohibited by 29 U.S.C. § 1106, or contain exculpatory clauses.

■ Contrary to the Funds' assertions and the District Court's holding, the term "employee," as used in the foregoing provision of the trust agreements, is not all-inclusive and does not comprehend *all* employees of Transport.[3] First, the collective bargaining agreements between Transport and the Union representing covered employees authorize payment to the Funds as part of the benefit package for covered employees. The agreements require Transport, as an employer, to make weekly contributions to the Funds for each employee covered by the agreements who has been on the payroll thirty days of more. Non-covered employees are outside of the scope of the collective bargaining agreements and Transport is not obligated to make contributions on their behalf.

Second, non-covered employees of Transport are outside the definitions of "employee" contained in Article I, section 3 of the trust agreements. Article I, section 3, provides that the term "employee" as used therein shall include:

(a) A person who is employed under the terms and conditions of a collective bargaining agreement entered into between an Employer as herein defined and a Union as herein defined, and on whose behalf payments are required by such collective bargaining agreement or applicable law to be made to the Fund by the Employer; or

(b) All persons employed by the Union, upon being proposed by the Union and after acceptance by the Trustees; and as to such Union personnel the Union shall be considered as Employer, solely for the purposes of contributions, within the meaning of this Agreement and Declaration of Trust and shall, on behalf of such personnel, make payments to the Trust at the times and at the rate of payment equal to that made by any other Employer who is a party to the Trust for the same benefits; or

(c) All persons employed by the Central States, Southeast and Southwest Areas Health and Welfare Fund or by the Central States, Southeast and Southwest Areas Pension Fund upon acceptance by the Trustees; and as to such Trust personnel the Trustees shall be deemed an Employer, solely for the purpose of contributions, within the meaning of this Agreement and Declaration of Trust and shall, on behalf of such personnel, make payments to the Trust at the times and at the rate of payment equal to that made by any other Employer who is a party to the Trust for the same benefits;

(d) All persons who are Trustees of Central States, Southeast and Southwest Area Health and Welfare Fund or Central States Southeast and Southwest Areas Pension Fund upon acceptance by the Trustees, as hereinafter defined; and on behalf of such persons who are Trustees, their Employers shall make or be presently required to make contributions to the Trust at the times and at the rate of payment equal to that required by any other Employer who is a party to the Trust for the same benefits.

(e) In all instances, the common law test, or the applicable statutory definition, of master-servant relationship shall control employee status.

(f) The continuation of employee status once established shall be subject to such reasonable rules as the Trustees may adopt according to law.

The definition of employee in Article I, section 3(a) is written in the conjunctive. A person is an employee under the trust agreements if he or she is employed under the terms and conditions of a collective bargaining agreement *and* is a person, *i.e.,* a covered employee, on whose behalf payments are required by the collective bar-

---

**3.** ERISA, 29 U.S.C. § 1002(6), however, defines "employee" as any individual employed by an employer.

gaining agreement. A non-covered employee of Transport is neither employed under such terms and conditions nor entitled to have payments made into the Funds on his or her behalf. Non-covered employees of Transport are similarly outside the scope of Article I, section 3(b), all persons employed by the Union, and section 3(c), all persons employed by the Funds, because they are employed by neither. Nor are they trustees under section 3(d).

The use of the phrase "shall include" in Article I, section 3 does not expand the meaning of "employee" to encompass non-covered employees. In the Eighth Circuit case of *Central States, Southeast and Southwest Areas Pension Fund v. CRST, Inc.*, 641 F.2d 616 (8th Cir.1981),[3a] which is factually on point with this case, the court addressed this issue as follows:

> We are aware that the term "shall *include*" is not necessarily synonymous with the term "shall *mean*." It is frequently used as a term of enlargement. In our judgment, it was so used as to those persons described in subsections (b) and (c), that is, as to the employees of the Union and trust fund personnel. However, it is obvious that insofar as subsection (a) is concerned, the definition of "employee" far from enlarging its meaning clearly *limits* it to "covered" employees, else the definition would serve no purpose whatever. It follows that the right of inspection is expressly limited to the records of "covered" employees.

*Id.* 618–19. We are persuaded by and concur with the Eighth Circuit's reasoning on this point.

Article I, sections 3(a), (b), (c) and (d) are provisions of inclusion. In contrast, Article I, section 3(e), on which the District Court relied, and section 3(f) are provisions of exclusion. Article 1, sections 3(e) and (f) merely qualify the employee status as defined in sections (a), (b), (c) and (d). Article I, section 3(e), limits "employee" as defined in the first four provisions to individuals who are not independent contrac-

tors or are otherwise outside of the control of the employer as determined by the common law master-servant relationship test or by statutory definition. The Funds might, for example, hire independent auditors to audit Transport's records. They would be exempt from employee status under Article I, section 3 of the trust agreements, which would absolve the trustees from any obligation to make weekly contributions to the Funds on their behalf. Similarly, Article I, section 3(f) limits employee status to individuals who do meet the requirements of the reasonable rules established by the trustees with regard to the continuation of employment status. That sections 3(e) and (f) qualify earlier provisions rather than provide an independent basis for the determination of employee status is indicated by their form, in contrast to that of earlier provisions. Article I, section 3 begins: "The term '[e]mployee' as used herein shall include: (a) [a] person . . . (b) [a]ll persons . . . (c) [a]ll persons . . . and (d) [a]ll persons . . . ." In contrast, Article I, sections 3(e) and (f) do not contain similar language. Sections 3(a), (b), (c) and (d) are similarly joined grammatically; they are linked into a continuous thread by the use of semi-colons and use of the disjunctive "or." Sections 3(e) and (f) are each separate sentences. Sections 3(a), (b), (c) and (d) also differ from sections 3(e) and (f) in their substance. Section 3(f) clearly does not purport to provide an independent basis for the determination of employee status.

A determination that none of the provisions of Article I, section 3 confer employee status on Transport's non-covered employees is also supported by several arguments of construction. If, as the Funds assert, non-covered employees of Transport are employees within the meaning of Article I, section 3 for purposes of investigation and disclosure under Article III, section 5, then they must be treated as Article I, section 3 employees in every other instance in the trust agreements where the term "employee" is used. The practical consequence of such a construction is that the trustees are

---

**3a.** *Overruled on other grounds*, Robbins v. Prosser's Moving & Storage Co., 700 F.2d 433 (8th Cir.1983) (en banc) (pension fund trustees

may determine employee coverage under collective bargaining agreement by circuit court action).

responsible to non-covered Transport employees just as they are to be covered Transport employees and the Funds are required to treat such non-covered employees as Article I, section 3 "employees" for the purposes of the Funds' coverage and benefits. This was clearly not the intent of the parties to the collective bargaining agreements because Transport is obligated to contribute weekly sums to the Funds only for covered employees.

Limiting Article I, section 3 to covered employees of Transport is consistent with the bargained-for benefit negotiated on behalf of Transport's covered employees only. It would be incongruous if covered employees, through the Union, could negotiate provisions for themselves that invade the province of Transport's company benefit plan for non-covered employees and impinge upon the privacy of non-covered employees' records and documents.

Confining the Article I, section 3 definition of employee to covered employees of Transport provides symmetry between the definitions of "employer" in the trust agreements and the employer's responsibilities to the Funds under the collective bargaining agreements and the definitions of "employee" in the trust agreements. Under the trust agreements an employee must be employed under the terms of a collective bargaining agreement *and* be a person on whose behalf the employer is required to make contributions to the Funds. Parallel with this definition of employee, an employer under the trust agreements must be subject to a collective bargaining agreement *and* make contributions to the Funds for covered employees under the terms of a collective bargaining agreement. To include non-covered employees *within* the definition of employees throws out this symmetrical relationship and replaces it with one where the employer contributes to the Funds only for covered employees yet a broader class of employees, consisting of covered and non-covered employees, are subject to the Funds and have rights under them.

Finally, allowing Article I, section 3(e) to be an independent grant of employee status rather than a qualification of sections 3(a), (b), (c) and (d), would negate the purpose of section 3(a) as it applies to Transport and sections (b) and (c) as they apply to the Union and trustees because (e) would be a broader, all encompassing provision in contrast to the narrow, more defined ones of sections 3(a), (b), (c) and (d). The parties could easily have used the ERISA definition of employee, expressly stated that employee includes *all* employees of the employer, or placed section 3(e) first and then narrowed it had they intended the definition of employee in the trust agreements to include non-covered employees of Transport. Because none of these alternatives were adopted and because the construction urged by the Funds works a radical extension of the definition of employee, not only for purposes of disclosure and investigation under Article III, section 5, but for all other articles and sections in which the term appears, it cannot be said that the intent of the parties was to include non-covered employees of Transport within the definition of employee in the trust agreements.

In addition to requiring each employer to furnish the names and other specifically denominated information pertaining to employees, Article III, section 5 continues that an employer shall furnish to trustees "such other information as the Trustees may reasonably require in connection with the administration of the Trust." Trustees, through their representatives, may also examine the pertinent records of an employer at the employer's place of business whenever necessary or advisable by the trustees for the proper administration of the trust. The Funds argue that this general language in Article III, section 5 gives the trustees the power and authority to investigate and obtain information not limited to Transport's covered employees.

In *CRST, Inc.,* the Eighth Circuit addressed this general language and concluded that "[i]n ... context, this language can only refer to information reasonably required as to 'covered' employees additional to the records specifically listed." *CRST, Inc., supra,* 619. We reach the same conclusion. Similarly, the authorization to examine pertinent records of the employer in the

second sentence of Article III, section 5 is so qualified.

▮ Therefore, the trustees do not have a contractual right to audit the records of all of Transport's employees under Article III, section 5. Non-covered employees of Transport are not employees within the meaning of Article I, section 3 of the trust agreements and therefore, neither can be nor are participants and beneficiaries of the Funds to whom the trustees owe a duty. 29 U.S.C. § 1104(a)(1). *See CRST, Inc., supra,* 618. Nor do the trustees have the per se right under the general language of Article III, section 5, to audit the records of all of Transport's employees. 29 U.S.C. § 1104(a)(1)(D).

▮ The Funds also argue that Article IV of the trust agreements gives the trustees the right to audit the records of all of Transport's employees. Article IV of the trust agreements gives the trustees the authority to control and manage the operation and administration of the trust in accordance with applicable law. Section 2 of Article IV requires the trustees to hold, manage, care for and protect the trust fund and collect the income therefrom and contributions thereto. Article IV, section 14(e) states that the "[t]rustees are . . . empowered, in addition to such other powers as are set forth herein or conferred by law . . . [t]o do all acts, whether or not expressly authorized . . ., which the [t]rustees may deem necessary or proper for the protection of the property held . . . [in trust]." With regard to their rule-making power, Article IV, section 9 provides that the trustees are authorized to formulate and promulgate any and all necessary rules and regulations which they deem necessary or desirable to facilitate the proper administration of the trust. Section 9 continues that all rules and regulations adopted by the trustees for the administration of the trust fund shall be binding on Transport and the Union, all parties dealing with the trust, and all persons claiming benefits. Article IV, section 17 provides that the trustees have the power to construe the provisions of the trust agreement and any construction adopted by

them in good faith shall be binding on Transport, the Union and the employees.

The broad language of Article IV of the trust agreements does not, however, give the trustees *carte blanche* powers to undertake an audit of the records of all of Transport's employees. They are limited in their discretion by ERISA and the common law concept that a trustee may only act within the scope of his or her authority. Neither the express terms of ERISA, the collective bargaining agreements nor the trust agreements give the trustees the broad right of inspection and investigation they seek for their audit and we have already held that only employees covered by a collective bargaining agreement may be considered "participants" in the Funds to whom fiduciary obligations are owed. We hold, however, that the terms of Article IV of the trust agreements, which are incorporated into ERISA's mandate that the trustees act in accordance with all plan documents and instruments,[4] give the trustees the power and authority to inspect Transport's books and records and question such persons as they deem necessary to enable them to determine facts relative to a particular employee's covered or non-covered status if they have reasonable cause to believe that a *particular employee* is covered by the collective bargaining agreement, i.e., is doing bargaining unit work, but has not been placed on the Union seniority list or otherwise classified by Transport or the Union as a covered employee.

▮ A limited right of investigation and inspection beyond the express provisions of the trusts based on a "reasonable cause" standard is supported by several factors. Under Article IV, section 14(e), which is incorporated into ERISA's statutorily imposed duties by 29 U.S.C. § 1104(a)(1)(D), the trustees' express powers are augmented by implied powers to do what is necessary or proper for the protection of trust property. Under the common law of trusts, a trustees' powers are similarly divided into those that are expressly granted the trustee

---

4. 29 U.S.C. § 1104.

in the governing instruments and powers that are inferred or implied. Powers may be inferred or implied from the terms of the governing instruments read as a whole, from an express directive to accomplish a particular goal unaccompanied by express directives on the ordinary and natural means of obtaining that result, and from the purposes of the trust. Bogert, *Trusts and Trustees,* § 551 Trustee's Power in General (2d ed. 1980).

Article IV, section 2 of the trust agreements expressly requires the trustees to protect the trust fund by collecting contributions from employers such as Transport. Article IV, section 14(e) expressly requires the trustees to protect trust assets. To protect trust assets, the trustees must ensure that contributions to the Funds correlate with the disbursement of benefits from them. Entitlement to Funds' benefits may be established by a concession amongst the parties that a particular individual is a covered employee or a person otherwise entitled to the Funds' benefits. Entitlement may also be established by the judicial or arbitral process where there is no concession that an employee, or one claiming under him or her, is a covered employee. *See Barrentine v. Arkansas-Best Freight System, Inc.,* 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981). To ensure that sufficient contributions are collected to correlate with benefits due those employees whose coverage is uncontested and those adjudicated to be entitled to benefits by an arbitrator or court and to comport with the congressional policy of protecting employee benefit rights, some limited right of inspection and investigation may be implied both from the terms of the trust agreements and from the common law of trusts.

■ We determine that this limited right of inspection and investigation is confined to factual situations in which the trustees have reasonable cause to believe that a particular person is covered by a collective bargaining agreement but has not been placed on the Union seniority list or otherwise classified by Transport or the Union as a covered employee. The "reasonable cause" requirement is supported by the statutorily imposed *"prudent man"* standard contained in ERISA, 29 U.S.C. § 1104(a)(1)(B). The same statutory provision requires a trustee to discharge his duties solely in the interests of the participants and beneficiaries of the Funds and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying the *reasonable expenses* of administering the plan. *Id.* § 1104(a)(1)(A)(i–ii). Given a limited duty to investigate on one hand, there must be a concomitant duty on the other not to undertake unreasonable investigations or inspections to pursue employee coverage or waste trust assets by unreasonably broad audits. The record as a whole indicates that the Funds are among the largest Taft-Hartley trust funds in the United States, that more than 13,000 employers participate and that they serve more than 500,000 employees whose job classifications are covered in thousands of collective bargaining agreements. The record also indicates that the majority of Transport's employees are not covered by a collective bargaining agreement. The requested audit of the records of all of Transport's employees attempted by the trustees, with its attendant intrusion into the employment records of non-covered employees who did not bargain for this intrusion, was apparently triggered in large part by the receipt of monies for four employees whose coverage was not disclosed by the Union seniority list, Transport or the Union, and instances of underreporting for covered employees. A prudent man would not authorize an audit of the records of all of Transport's employees under these circumstances. The decision to do so would be arbitrary and capricious. Nor could a determination that the expenses of such an audit be reasonable be sustained.

The reasonable cause standard also corresponds with the standard imposed on the Department of Labor in investigations of possible ERISA violations, 29 U.S.C. § 1134(a)(2).[5]

---

5. It seems unlikely that Congress would have imposed a good cause predicate to investiga-

tions by the Secretary of Labor but intended

In addition, a "reasonable cause" standard protects the trustees without doing great violence to traditional labor relations. Coverage under the terms of a collective bargaining agreement has traditionally been within the province of the employer and union. The collective bargaining agreements entered into between Transport and the Union in this case contain a grievance clause which may only be invoked by Transport or the Union in the event any individual's status as a covered or non-covered employee under the collective bargaining agreements comes into dispute. The Funds have no contractual right to participate in this dispute resolution process. The "reasonable cause" standard strikes a balance between the trustees' needs to satisfy their statutory and contractual obligations in the limited situations in which the investigation of proper Funds' contributions are warranted yet preserves the privacy and integrity of the grievance and arbitration provisions agreed to by Transport and the Union as a means of resolving questions of employee coverage.

Finally, a "reasonable cause" standard for inspection and investigation of an employee who has not been placed on the Union seniority list or otherwise classified by the Union or Transport as a covered employee, limits the possibility of intrusion into the records of non-covered employees who have not bargained for the intrusion to particular situations where the intrusion is factually warranted. This preserves and promotes confidentiality of non-covered employee records.

█ For the above-mentioned reasons we conclude that Article IV of the trust agreements, incorporated into ERISA, 29 U.S.C. § 1104, gives the trustees the power and authority to inspect Transport's books and records relative to the covered or noncovered status of the four employees on whose behalf Transport made weekly contributions to the Funds but who were not placed on the Union seniority list or otherwise classified by Transport or the Union as covered employees. Their decision to audit

that benefit fund trustees have the duty to

the records of these four employees under the terms of the trust agreements is neither arbitrary nor capricious. They may also examine records relating to admittedly covered employees which are necessary to determine when their coverage began and ended or the proper amount of contributions. They may also be entitled to other records such as drivers' logs which relate only to covered employees. It would appear that all truck drivers employed by Transport are covered by the collective bargaining agreements. Under the "reasonable cause" standard, however, we find the trustees' attempt of an audit of the records of all of Transport's other non-covered employees to be arbitrary and capricious. An audit of the records of all of Transport's employees is outside of their statutorily and contractually imposed duties, express or implied, as a matter of law and the District Court erred in construing the agreements to the contrary.

### III. NLRB Disclosure Rules

█ The Funds argue that they have a right to all employee information by analogy to the NLRB disclosure rules. 29 U.S.C. § 158 imposes a statutory duty to bargain collectively and fairly. The courts have concluded that this duty to bargain includes a duty to provide, upon request, information relevant to bargainable issues. *NLRB v. Rockwell-Standard Corp., Transmission and Axle Division, Forge Division,* 410 F.2d 953, 957 (6th Cir.1969). The Funds argue that this concept applies by analogy to allow it to obtain information on all Transport employees. The standard of disclosure in labor cases is distinguishable here for several reasons: this case involves multiemployer benefit plans, not collective bargaining agreements, and the Funds are trustees, not parties to the collective bargaining process. Even if the standard of disclosure in labor cases is applied by analogy, that standard requires that the solicitor of such information bear the burden of showing relevance and satisfying the reviewing tribunal that the rights of the com-

examine all records.

pany whose information is to be disseminated are taken into account. *Kroger Co. v. NLRB,* 399 F.2d 455, 457 (6th Cir.1968). Again, concern over the status of four employees is urged to justify an investigation into the records of all Transport's employees. This does not satisfy the relevancy test nor protect the interest of Transport's non-covered employees or Transport.

### IV. Impact on Duties of The Trustees and the Funds

In bringing this suit, the trustees have argued that they and the Funds would be subject to liability if they are prevented from undertaking the sweeping and generalized audit they have attempted. Therefore, the right of investigation and inspection they have requested should be honored. While the issue of whether the trustees could breach their fiduciary duties by failing to conduct such an audit is not before us, nor is the Funds' liability to a participant for whom no employer contribution has been made, it would appear that both the trustees and the Funds are adequately protected. With respect to the personal liability of the trustees for an alleged breach of fiduciary duty, we note that a trustee may only act within the scope of his or her authority. To the extent that authority is limited by law, as we have found the trustees' ability to investigate and inspect under the statute and contractual provisions is limited in the case on appeal, there can be no breach of duty by the trustees for failing to undertake a more sweeping audit. A trustee may properly rely on limits to his or her authority imposed by the trust agreement and by law. *See Central States, Southeast and Southwest Area Pension and Health and Welfare Funds v. McNamara Motor Express Co., Inc.,* 503 F.Supp. 96, 101 (W.D.Mich.1980).

The Funds enjoy a number of protections against being called upon to dispense benefits to a participant on whose behalf no contributions or insufficient contributions were made. The Funds and the Secretary of Labor may inspect and investigate employee records where coverage is

unclear under the "reasonable cause" standard. 29 U.S.C. § 1134. Further, the Union has a strong interest in seeing that Transport's employees are within the collective bargaining agreements. Employees also have a strong interest in being included in the collective bargaining unit. The reporting requirements of 29 U.S.C. § 1021 may be expected to put an employee on notice of his or her participant or nonparticipant status. An employee seeking benefits in such a case might be subject to an estoppel argument. Finally, the Funds, if liable, may well have a recoupment action against an employer for unpaid contributions. Therefore, we determine that the possibility of liability alone on the part of the trustees or the Funds does not justify the broad audit they seek because adequate protections appear to exist to protect them.

Accordingly, the judgment of the District Court is reversed and the case is remanded for further proceedings consistent with this opinion.