Harrison COMBS, et al.,
Plaintiffs-Appellants,

v.

Mrs. Bob KING, individually and d/b/a King Trucking, Defendant-Appellee.

No. 84–7131.

United States Court of Appeals,
Eleventh Circuit.

July 2, 1985.

Robert H. Stroop, Jr., Patrick K. Nakamura, Birmingham, Ala., William F. Hanrahan, David C. Bernabucci, Asst. Gen. Counsel, Washington, D.C., for plaintiffs-appellants.

Sydney F. Frazier, Jr., Birmingham, Ala., for defendant-appellee.

Before JOHNSON and CLARK, Circuit Judges, and LYNNE [*], District Judge.

CLARK, Circuit Judge:

This case involves the Employee Retirement and Income Security Act of 1974, which is commonly referred to as ERISA. The plaintiffs-appellants are the Trustees of several health and retirement trust funds under the United Mine Workers of America (UMWA) union contract which the defendant, Mrs. Bob King d/b/a King Trucking, as employer, has signed. The Trustees instituted this action to recover alleged deficiencies in payments to the funds. They sought an injunction requiring the defendant to perform all of the obligations imposed by ERISA, the Wage Agreements, and the Trusts. In addition, the Trustees demanded the defendant to "present for inspection and/or copying all records pertaining to hours worked by defendant's classified employees necessary to verify the accuracy of the amounts paid and/or due and owing to the Funds....." *Record* at 6.

Both parties filed motions for summary judgment and the district court granted judgment in favor of the defendant. Because the district court erred in granting summary judgment, we REVERSE and REMAND for further proceedings.

## I. FACTS

Mrs. King operated King Trucking, which was a sole proprietorship engaged in the business of hauling coal. Mrs. King, as the owner of King Trucking, signed two contracts with the United Mine Workers of

---

[*] Honorable Seybourn H. Lynne, U.S. District Judge for the Northern District of Alabama, sitting by designation.

America (UMWA). Article XX of these agreements pertained to the UMWA pension and benefit plans and specified the amount of contributions that were to be made by the employer to the plans. Two sections of Article XX are relevant to this case.

Section d(vii) of Article XX provided: Hours of work for purposes of Employer contributions to the plans and trusts described in this Article shall include all hours worked, or fractions thereof, by Employees in a classified job covered by this Agreement. Hours actually worked for which a premium pay of any type is provided shall be treated for purposes of Employer contributions to the Trusts as though worked on a straight-time basis. Reporting pay for hours not actually worked shall not be included for the purpose of making Employer contributions to the Trust.

*Record* at 17, 39.

Section f(2) of Article XX provided: If the Trustees determine that there is reasonable cause to question the accuracy of the sums paid under section (d) of this Article, or of any verification thereof made by an Employer for a given monthly or annual period, the Employer shall, upon written request by the Trustees, make available for inspection ... those records which are necessary to verify the accuracy of the sums paid.

*Id.* at 18, 39.

There were several other documents considered by the district court when it ruled on the motions for summary judgment. The Trustees submitted three relevant affidavits. One of the affiants was a certified public accountant, who had provided accounting and auditing services to the UMWA health and retirement funds. His duty was to audit and inspect the books and records of coal operators who had signed UMWA agreements in order to determine the amount of coal produced and hours worked and the amount owed to the Trustees of UMWA health and retirement funds. The accountant indicated that he had examined and analyzed a report of the audit of Mrs. Bob King individually and d/b/a King Trucking to determine whether the company was in compliance with provisions of the UMWA agreements providing for payments to the health and retirement funds. The accountant concluded:

5. The audit of the defendant company's records covered the period from March 27, 1978 through December 31, 1980.

6. During said period the audit disclosed that 53,387.75 hours had been worked by the defendant company's classified employees. The comany [sic] had reported and remitted contributions for 35,115.12 hours, resulting in an unreporting of 18,272.63 hours.

7. The indebtedness, as disclosed by the audits for the period set forth above, was as follows:

| | |
|---|---|
| Amount due for unreported hours worked | 14,194.95 |
| Interest due on the above amount through August 1, 1982 | 5,032.66 |
| TOTAL AMOUNT DUE | $19,227.61 |

8. Interest on the amount of $14,-194.95 will accrue at the rate of $7.78 per day after August 1, 1982.

*Record* at 61.

The other affiants were King Trucking employees. They stated that although their "starting and quitting" time varied, they generally worked at least eight hours a day. The employees also acknowledged that it would have been impossible for them to have worked the same hours each month and that they would have been paid more had they been paid by the number of hours worked rather than the percentage of coal hauled.[1] *Record* at 123–27

Mrs. King submitted two affidavits that conflicted with the affidavits of the accountant and the employees. She declared that the figures submitted by the Trustees were not accurate because they were computed by dividing the gross pay of the employees by the standard wage rate called for in the UMWA contract. Mrs.

---

1. The employees mentioned that they were paid 25% of the gross income per ton of coal hauled.

King stated that the Trustees' calculation did not reflect the correct number of hours worked because her employees were paid on the basis of the number of tons hauled and not on an hourly rate. According to Mrs. King, this method of compensation resulted in her employees receiving more than they would have received under the hourly rate called for in the contract. In addition, Mrs. King stated that pension contributions were not required for hours spent by employees who were performing non-classified work. *Record* at 65–67.

Mrs. King further declared that the hours shown on the reports submitted to the Trustees represented the number of hours worked by her employees. Mrs. King admitted she did not have other records of hours worked by her employees.

Several of the reports submitted by Mrs. King were identical with respect to the number of hours worked by her employees. For example, from May, 1978 until June, 1979, her monthly reports indicated that her employees worked a total of 600 hours.[2]

Because many of the reports contained exactly the same number of hours worked by Mrs. King's employees, the Trustees argued that the reports were unreliable and that they were entitled to divide the gross earnings of the covered employees by the contractual wage rate. Conceding that this calculation might be inaccurate, the Trustees asserted that it was proper because of Mrs. King's failure to maintain adequate records of the hours worked by her employees. In summary, the Trustees urged the district court to place upon Mrs. King the burden of proving that their calculations were incorrect.

Although the district court observed that Mrs. King's assertions were incredible, it found the Trustees had not produced evidence of the number of hours actually worked by Mrs. King's employees. The court reasoned:

> Although plaintiffs would have this court analogize from cases in the Fair Labor Standards Act that place the burden on an employer to prove the actual number of hours worked in the absence of clear records, plaintiffs offer no like authority directly applicable to this case. Absent clear direction by statute or even contract provision this court sees no reason to relieve plaintiffs of the burden of proving a number of hours actually worked different fromthat [sic] asserted by defendant. The court finds the cases dealing with the Fair Labor Standards Act distinguishable because of the statutory duty placed on employers to keep the pertinent records. Neither the UMWA contract nor any statute requires defendant to keep the type records that plaintiffs desire in this case.

*Record* at 140–141. The district court denied the Trustees motion for summary judgment and granted Mrs. King's motion for summary judgment.

## II. DISCUSSION

This appeal raises a question of first impression in this circuit. We must first decide whether an employer has a statutory duty under ERISA to maintain adequate records regarding the number of hours worked by its employees. Second, if such a duty exists, does an employer, who fails to produce adequate records, assume the burden of disproving the accuracy of the plaintiff's figures regarding the number of hours worked. The third issue we

---

**2.** Below is our summary of some of the reports submitted.

| Month/Year | Hours Worked | |
|---|---|---|
| 4/78 | 300 | |
| 5/78–6/79 | 600 | each month |
| 7/79–1/80 | 100 | each month |
| 3/80–4/80 | 1100 | each month |
| 5/80 | 1200 | |
| 7/80 | 1401 | |
| 9/80 | 1460.01 | |
| 10/80–11/80 | 2240 | each month |
| 12/80 | 2400 | |
| 12/80 | 2080 | |
| 2/81 | 2400 | |
| 3/81 | 2520 | |
| 4/81 | 2002 | |
| 8/81 | 864 and 1979.50 | |

Record at 68–104, 114–18.

address is whether the district court erred in granting summary judgment.

### A. *Employers Duty to Maintain Records*

The question of whether an employer has a statutory duty to maintain records can only be answered after an analysis of the pertinent provisions of ERISA. "In determining the scope of a statute, we look first to its language. If the statutory language is unambiguous, in the absence of 'a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive.'" *United States v. Turkette*, 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981).

Section 1059(a)(1) of title 29 sets forth general recordkeeping and reporting requirements. It provides:

> Except as provided by paragraph (2) *every employer shall, in accordance with regulations prescribed by the Secretary, maintain records with respect to each of his employees sufficient to determine the benefits due or which may become due to such employees.* The plan administrator shall make a report, in such manner and at such time as may be provided in regulations prescribed by the Secretary, to each employee who is a participant under the plan and who—
>
> > (A) requests such report, in such manner and at such time as may be provided in such regulations,
> >
> > (B) terminates his service with the employer, or
> >
> > (C) has a 1-year break in service (as defined in section 1053(b)(3)(A) of this title).
>
> *The employer shall furnish to the plan administrator the information necessary for the administrator to make the reports required by the preceding sentence.....*

29 U.S.C. § 1059 (emphasis added).

No court has expressly held that an employer has a duty to maintain records under section 1059. However, in *Central States, Southeast and Southwest Areas*

*Pension Fund v. Central Transport, Inc.*, 698 F.2d 802 (6th Cir.1983), the court observed that section 1059 imposed "a duty of responsibility and record keeping on employers who are participants in an employee benefit plan." *Id.* at 805. The Court also noted that "ERISA imposes special responsibilities on the trustees who administer employee benefit plans *and the employers ... who contribute to them.*" *Id.* at 806. In *Korn v. Levine Bros. Iron Works Corp.*, 574 F.Supp. 836 (S.D.N.Y. 1983) the district court made a similar observation when it discussed the failure of an employer and several trustees to offer into evidence the company's original payroll and other relevant records. The court stated:

> One last factor is particularly persuasive. At trial, in the face of the strong evidence suggesting that the quarterly payments were included in the Plan's definition of Monthly Compensation, the defendants were asked to provide some relevant corporate documents. In response, they provided only summary sheets of original worksheets. Moreover, it is unclear when these summaries were prepared. After some hesitation on defendants part, they did initially produce in court with the company's original payroll and other records—two sets in fact. Perplexingly, neither was offered into evidence. *This is despite the legal requirement mandating the maintenance of such records.* See 29 U.S.C. §§ 1027 & 1059 (1975); 29 C.F.R. § 486.-1–486.5 (1983).

*Id.* at 840–41 (emphasis added).

The legislative history of ERISA demonstrates that it was enacted, at least in part, to increase the information and data available to participants. When Congress enacted the Welfare and Pension Plans Disclosure Act, which preceded ERISA, it believed that the information disclosed would enable employees to police their plans. However, Congress later concluded that the limited data available under the prior act was insufficient and that a "more particularized form of reporting" was needed.

*See* H.R.Rep. No. 98–533, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Ad.News 4639, 4649.

Obviously employers were to play integral roles in the disclosure process. The committee discussed the employer's record-keeping requirements.

*Recordkeeping requirements.*—To carry out the intent of the vesting provisions (primarily those involving intermittent employment), the employer would be required to keep records of the years of service of his employees and the percentage of vesting which the employees had earned, together with any additional information required by the Secretary or his delegate in order to determine the employee's benefits. In the case of a multiemployer plan, the employer would furnish the required information to the plan administrator (who would be required to maintain the records), in accordance with regulations.

Failure to maintain or furnish the required records would result in a civil penalty of $10 for each employee with respect to whom the failure occurs, unless it is shown that the failure is due to reasonable cause. The committee expects that the necessary records will be retained by employers for at least 10 years following a break in service. After that, the employee could still establish his right to vesting based on prior service, but the burden of producing the evidence would shift to the employee.

H.R.Rep. No. 93–807, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Ad. News 4639, 4731–32.

■ The plain language of the statute clearly places a duty upon the employer to maintain records that will permit a determination of when the benefits are due for employees as well as the information necessary to enable the plan administrator to develop reports which are required by statute. This interpretation is consistent with the legislative history previously discussed as well as the underlying policy of ERISA which is "to protect ... the interests of participants in employee benefit plans ...

by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto ...." 29 U.S.C. § 1001(b).

Our conclusion that an employer has a statutory duty to maintain records does not end our analysis. We must determine the nature of the records which are required to be maintained. In this respect we are guided by 29 U.S.C. § 1027. That section provides:

Every person subject to a requirement to file any description or report or to certify any information therefor under this subchapter ... shall maintain records on the matters of which disclosure is required *which will provide in sufficient detail the necessary basic information and data from which the documents thus required may be verified, explained, or clarified, and checked for accuracy and completeness, and shall include vouchers, worksheets, receipts, and applicable resolutions,* and shall keep such records available for examination for a period of not less than six years after the filing date of the documents based on the information which they contain, or six years after the date on which such documents would have been filed but for an exemption or simplified reporting requirement under section 1024(a)(2) or (3) of this title.

29 U.S.C. § 1027.

This section has recently been construed by the Sixth Circuit in *United States v. S & Vee Cartage Co.,* 704 F.2d 914 (6th Cir. 1983) *cert. denied,* —— U.S. ——, 104 S.Ct. 343, 78 L.Ed.2d 310 (1983). In *S & Vee Cartage* the court held that certain forms which an employer used to report the amount of contributions due and changes in the status of employees were "required 'to be kept'" under section 1027 because they contained "the necessary information and data from which annual reports, required under 29 U.S.C. §§ 1023(a)(2)(A) and 1024(a) (1976) to be published and sent by the administrator of a fund to the Secretary of Labor, 'may be verified, explained, or clarified, and checked for accuracy and

completeness....' " *Id.* at 917. The court noted that the documents were "the primary source, if not the sole source, available to trustees of pension and welfare funds with respect to the names of the employees covered and the amount of contributions made by employers." *Id.*

In concluding that the records were required to be retained the Sixth Circuit examined the Welfare & Pension Plans Disclosure Act and a Department of Labor interpretive bulletin. The court observed that the language of the Welfare & Pension Plan Disclosure Act, 29 U.S.C. § 308b, was virtually identical to 29 U.S.C. § 1027.[3] Thus, the court concluded that "[t]here [was] no indication that the requirement for the retention of these types of records was changed by the enactment of ERISA." *Id.*

The Supreme Court has stated that "authoritative administrative constructions should be given the deference to which they are entitled, [and] absurd results are to be avoided ...." *United States v. Turkette,* 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981). We have also recognized that "construction of a statute by an agency charged with its administration is entitled to great deference." *Kaneb Services, Inc. v. Federal Savings and Loan Insurance Corp.,* 650 F.2d 78, 83 n. 13 (5th Cir. Unit A 1981) (citing *Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980)).

An examination of the regulation pertaining to 29 U.S.C. § 308b supports our conclusion that time cards or similar records of the hours worked by employees are required to be maintained. The regulation provides:

§ 486.3 **Records to be retained.**

(a) The records required to be retained are all documents which will provide in

sufficient detail the necessary basic information and data from which the description and reports which are required or may be required under the Act may be verified, explained or clarified, and checked for accuracy and completeness.

(b) Such records include (but are not limited to) resolutions and matters relating to the plan for which a description or annual report is or may be required to be filed, journals, ledgers, checks, invoices, bank statements, contracts, agreements, vouchers, worksheets, receipts, claim records and payrolls of any party described in § 486.2 which would tend to support information required in any report under the Act.

(c) Records maintained shall also include, where appropriate, information certified to the Administrator by an insurance carrier or service or other organization. Other records such as payrolls from contributing employers, which the reporting person, trustee, or organization, as described in § 486.2 obtains in the regular course of its operations, to the extent such records may be used for said verifying or checking shall also be retained.

29 C.F.R. 486.3 (1984).

We note that the regulations specifically provide that the records required to be maintained are *not* limited to those enumerated.

The importance of this agency interpretation of the Welfare Pension Plan Disclosure Act is clear as Congress was presumably aware of it when it enacted 29 U.S.C. § 1027 in substantially the same form. We believe the regulation provides a reasonable construction of the statute; thus, we give it the deference which it is due.

We conclude that Mrs. King had a duty to maintain records that would enable

---

**3.** Section 308b provided:

§ 308b. **Retention of records**
    Every person required to file any description or report or to certify any information therefor under this chapter shall maintain records on the matters of which disclosure is required which will provide in sufficient detail the necessary basic information and data from which the documents thus required may

be verified, explained, or clarified, and checked for accuracy and completeness, and shall include vouchers, worksheets, receipts, and applicable resolutions, and shall keep such records available for examination for a period of not less than five years after the filing of the documents based on the information which they contain.
  29 U.S.C. § 308b.

the Trustees to determine the accuracy of her contributions. Although Mrs. King submitted the reports which included the number of hours worked by her employees, the Trustees were entitled, under the contract and under the common law of trusts to investigate the underlying records supporting these reports. As the court stated in *Central States, Southeast & Southwest Areas Pension Fund v. Central Transport, Inc.*, 698 F.2d 802 (6th Cir.1982):

> To ensure that sufficient contributions are collected to correlate with benefits due ... and to comport with the congressional policy of protecting employee benefit rights, some limited right of inspection and investigation may be implied both from the terms of the trust agreements and from the common law of trusts.
>  .... Given a limited duty to investigate on one hand, there must be a concomitant duty on the other not to undertake unreasonable investigations or inspections to pursue employee coverage or waste trust assets by unreasonably broad audits.

*Id.* at 811.[4a]

As the agreements required contributions to be paid based on the hours worked, it would not have been unreasonable or a waste of trust assets had the Trustees sought to examine the records upon which the monthly reports were based.[4] Mrs. King implies that the Trustees did not have the right to examine these records. If this argument were valid, it would mean that the Trustees would never be able to verify the accuracy of the reports submitted. This is an unreasonable conclusion.

Thus, we hold that Mrs. King had a statutory duty to maintain records of the number of hours worked by her employees since "hours of work for purposes of Employer contributions to the plans and trust ... shall include all hours worked, or fractions thereof, by Employees in a classified job covered by [the] agreement." Article XX d(vii), *Record* at 17, 39.[5]

Because we hold that Mrs. King had a statutory duty to maintain adequate records, we do not address whether she had a duty under the provisions of the collective bargaining agreement.

### B. Burden of Proof

The Trustees argue that Mrs. King had the burden of disproving the Trustee's estimate of the hours worked by Mrs. King's employees due to her failure to maintain adequate records. They cite various cases involving the Fair Labor Standards Act to support their position.[6] These cases essen-

---

4. We note that the contract provisions establish that Mrs. King had a contractual duty to maintain such records as would be "necessary to verify the accuracy of the sums paid." Article XX(f)(2). As contributions to the fund were based on the hours worked by the employees, it is evident that the contract contemplated the maintenance of time records. Mrs. King claimed that her employees were not paid on an hourly basis "but were instead paid on the basis of the number of tons hauled, which is a permissable [sic] method of compensation under the UMWA contract, *provided that the compensation for tons hauled is not less than the money that the men would have received if they were paid by the hourly rates set forth in the contract.*" Affidavit of Mrs. King, *Record* at 112 (emphasis added). Assuming the correctness of Mrs. King's statement, she would nevertheless be required to maintain records of the hours worked because she was required under the contract to pay *at least* the hourly rate set forth in the contract. To satisfy this requirement, it would have been necessary for Mrs. King to make a comparison of the hours worked and the amount paid for the tons hauled. Clearly, a prudent employer would have maintained records that would permit such a comparison and that would provide a basis for the verification of contributions paid to the fund.

4a. *Central States, Southeast & Southwest Areas Pension Fund v. Central Transport, Inc.*, 698 F.2d 802 (6th Cir.1983), has been reversed by the Supreme Court after this case was decided. *See Central States, Southeast & Southwest Areas Pension Fund v. Central Transport, Inc.*, —— U.S. ——, 105 S.Ct. 2833, 86 L.Ed.2d 447 (1985). The reversal by the Supreme Court establishes a broader right of audit by the Plan Trustees than authorized by the Sixth Circuit. Thus the reversal does not affect our holding in this case and in fact constitutes an affirmation of it.

5. These records could have been in the more traditional form of time cards or in another reasonable form. Regardless of the form, Mrs. King should have maintained written records of the hours worked by her employees.

6. Cases cited by the appellants are: *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 66 S.Ct.

tially hold that where an employer fails to keep proper records in conformity with his statutory duty, an employee carries his burden "if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Anderson v. Mt. Clemens Pottery Co,* 328 U.S. 680, 687, 66 S.Ct. 1187, 1192, 90 L.Ed. 1515 (1946). The burden upon an employer, who has taken his chances with being in compliance, is that the employer must "disprove" the employees testimony that the Act was violated. *See Skipper v. Superior Dairies, Inc.,* 512 F.2d 409, 420 (5th Cir.1975). As stated by the Supreme Court:

> The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

*Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687–88, 66 S.Ct. 1187, 1192, 90 L.Ed. 1515 (1946) (citation omitted).

Mrs. King argues that these cases do not apply because Mrs. King produced records of the monthly hours worked by her drivers. The cases cited, according to Mrs. King, apply only where the employer has failed to produce "any" evidence to controvert the showing made by the employees. The critical issue, as framed by Mrs. King, is "whether the Trustees have offered any different evidence on the basis of which the trial court could have made a finding "as a matter of just and reasonable inference" that some greater number of hours were actually worked." *Appellee's Brief* at 7. Mrs. King does not question whether the cases are distinguishable because they were brought under the Fair Labor Standards Act (FLSA).

■ Before we rule on Mrs. King's arguments, we must determine whether the burden of proof in cases brought under the FLSA is appropriate in cases brought under ERISA. This too is a question of first impression in this Circuit.

We are guided by the Supreme Court's discussion in *Anderson v. Mt. Clemens Pottery Co.* In *Anderson* the Court considered the remedial nature of the FLSA, the great public policy which it embodied, and the fact that a stringent burden of proof upon employees would have the practical effect of impairing many of the statute's benefits. Of considerable importance was the employer's duty to maintain proper records. The Court observed:

> Due regard must be given to the fact that it is the employer who has the duty under § 11(c) of the Act to keep proper records of wages, hours and other conditions and practices of employment and who is in position to know and to produce the most probative facts concerning the nature and amount of work performed. Employees seldom keep such records themselves; even if they do, the records may be and frequently are untrustworthy. It is in this setting that a proper and fair standard must be erected for the employee to meet in carrying out his burden of proof.

*Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687, 66 S.Ct. 1187, 1192, 90 L.Ed. 1515 (1946).

As stated previously, ERISA was enacted to protect the interests of participants in employee benefit plans by requiring the disclosure of financial and other information. Congress had found that "owing to the lack of employee information and adequate safeguards concerning their operation, it is desirable ... that disclosure be made and safeguards be provided with respect to the establishment, operation and

1187, 90 L.Ed. 1515 (1946); *Donovan v. New Floridian Hotel, Inc.,* 676 F.2d 468, 471–73 (11th Cir.1982); *Skipper v. Superior Dairies, Inc.,* 512 F.2d 409, 419–20 (5th Cir.1975); *Brennan v. General Motors Acceptance Corp.,* 482 F.2d 825, 829 (5th Cir.1973).

administration of such plans." 29 U.S.C. § 1001.

[redacted] After considering these factors, we hold that the standard of proof and the shifting of the burden as set forth in *Anderson v. Mt. Clemens Pottery Co.* must be applied in a case such as this one brought under ERISA. In this case the district court did not consider the Trustees' burden because it found the cases dealing with the FLSA were distinguishable due to "the statutory duty placed on employers to keep the pertinent records." *Record* at 141. For this reason we do not address Mrs. King's contention that the Trustees did not present sufficient evidence to show the amount of hours worked as a matter of just and reasonable inference. This issue should be resolved by the trial court on remand.

C. *Summary Judgment*

[redacted] "On appeal from summary judgment the record must be viewed in the light most favorable to the party opposing the motion." *Benton-Volvo-Metairie, Inc. v. Volvo Southwest, Inc.,* 479 F.2d 135, 138 (5th Cir.1973). The party seeking summary judgment bears the exacting burden of showing both that there is no actual dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. *Id.*

In this case, the Trustees' burden in responding to the summary judgment motion was to offer significant probative evidence that tended to support its complaint. *Pan Islamic Trade Corp. v. Exxon,* 632 F.2d 539, 554 (5th Cir.1980), *cert. denied,* 454 U.S. 927, 102 S.Ct. 427, 70 L.Ed.2d 236 (1981).

[redacted] The Trustees met their burden when they produced the affidavits of two of Mrs. King's employees and of the certified public accountant. These affidavits raised genuine questions about the accuracy of Mrs. King's records and the number of hours worked by her employees.

Given the ambiguities in the record, the conflicting versions regarding the number of hours worked by Mrs. King's employees, and the competing factual inferences that arose, it is clear that Mrs. King should not have obtained a summary judgment. She failed to carry the burden of demonstrating that there is no actual dispute as to the material facts in the case. *Adickes v. S.H. Kress and Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

For the reasons stated above, we hold that the district court erred in granting summary judgment.

III. CONCLUSION

The district court erred when it found that Mrs. King did not have a duty to maintain records and did not have the burden of proving the actual number of hours worked in the absence of clear records. The court also erred in granting summary judgment. For these reasons we REVERSE and REMAND to the district court for further consideration in light of this opinion.

REVERSED and REMANDED.