785 F.2d 307
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
CENTRAL STATES SOUTHEAST & SOUTHWEST AREAS PENSION FUND &
HOWARD McDOUGALL, Trustee and on Behalf of all
Trustees, Plaintiffs-Appellees,
v.
TRANSERVICE SYSTEMS, INC., Defendant-Appellant.
 84-3869
 United States Court of Appeals, Sixth Circuit.
 1/7/86
 
 Before: JONES and WELLFORD, Circuit Judges; and DeMASCIO,* District Judge.
 PER CURIAM.
 
 
 1
 Transervice Systems, Inc. ('Transervice') appeals the entry of judgment requiring it to pay sizeable funds for delinquent contributions and interest, liquidated damages, and related attorneys' fees[1] to the Central States Southeast and Southwest Areas Pension Fund ('Fund'). By agreement of the parties the matter was referred to a magistrate who heard the case and entered judgment against Transervice upon an estoppel theory.[2] For the reasons set forth infra we REMAND this case for further findings.
 
 
 2
 Transervice, known as Dorwood Rental Co. during a fraction of the years relevant to this case, operated under the National Master Freight Agreement in conjunction with Teamsters Local 20. The agreement defined the persons to be covered by the collective bargaining agreement as drivers 'for transportation purposes.' If an employee fell within the terms of the collective bargaining agreement, Transervice was required to make necessary contributions to the Fund.
 
 
 3
 In February 1970, Transervice employed Rollie Osterhout as a dispatcher who occasionally drove company trucks to those company customers who leased their trucks. During his first two years with the company, Osterhout did not carry or deliver freight and was not, therefore, covered by the collective bargaining agreement. It was not until April 1972 that Osterhout regularly performed as a truck driver for transportation purposes. From April 1972 until he retired in 1980, Osterhout performed collective bargaining activity.
 
 
 4
 During the 1970s Transervice withheld federal, state, and local taxes for Osterhout and made social security contributions on his behalf. No pension fund contributions were made by Transervice on Osterhout's behalf from February 1970 to April 1972. In April 1972 when Osterhout began performance of duties covered by the collective bargaining agreement, Transervice added Osterhout to its monthly billing form submitted to the Fund and continued contributions until Osterhout's retirement in 1980.
 
 
 5
 On September 22, 1980, Osterhout applied to the Fund for retirement benefits. In conducting its standard evaluation procedure, the Fund obtained social security records of wages, information from the local union, and a verification of employment from each of the companies at which applicant Osterhout had worked.
 
 
 6
 In response to the Fund's verification of employment information, Transervice completed and returned a form signed by its president, Floyd Van Gunten on November 25, 1980, identifying Osterhout as a driver from February 1970 through 1980. Teamsters Local 20 also mailed an affidavit delineating Osterhout's service under the collective bargaining agreement at approximately the same time stating that Osterhout had only served under the agreement from April 1972 to August 1980.
 
 
 7
 Since Transervice had not made pension contributions for Osterhout during his first approximately two years of employment, the Fund sent it a letter of inquiry. Before receiving Transervice's response, however, the Fund notified Osterhout that it was denying benefits, stating that he lacked the requisite years of covered employment; the Fund qualified its denial by adding that further inquiries were being made of Transervice. On March 12, 1981, the next day, Transervice replied to the Fund's inquiry stating that contributions had not been made on Osterhout's behalf from 1980 to early 1982 because Osterhout had not been a dues paying member of the union during that period of time.
 
 
 8
 Thereafter, the Fund again contacted Teamsters Local 20 to obtain clarification. The union was asked to 'advise whether Osterhout was working under the terms of a Collective Bargaining Unit during that period.' When presented directly with this question from the Fund, the local union president incorrectly wrote back to the Fund, stating, 'Mr. Osterhout was working under the terms of a collective bargaining agreement' for the two years, 1970-72, in question.
 
 
 9
 At this point, in August 1981, the Fund billed Transervice for its unpaid contributions for the two-year period. On September 24, 1981, Floyd Van Gunten responded to the billings by again stating that no contributions were owed on behalf of 'truck driving employee' Osterhout because he was not a union member, 'although he was driving truck throughout that period . . ..'
 
 
 10
 On January 5, 1982, a Transervice representative reiterated in a telephone conversation with the Fund that Floyd Van Gunten refused payment on behalf of Osterhout because union dues had not been paid for the period in question. With regard to Osterhout's application, the Fund requested from Transervice '[a]dditional information . . . required before this claim can be finalized' by a form dated November 4, 1982. The completed form, signed by Floyd Van Gunten, was dated November 11 and received by the Fund on November 15, 1982.
 
 
 11
 Based upon the verification received from Transervice that Osterhout was 'driving truck' during the period from 1970 through April 1, 1972 and upon the information submitted by Teamsters Local 20, the Fund came to the conclusion that Osterhout was working under the terms of a collective bargaining agreement during the full ten year period. The Fund granted Osterhout credited service for the period from March 23, 1970 through April 1, 1972. On December 17, 1982, the Fund finalized and approved Osterhout's 20-year service retirement benefit, and Osterhout has received a pension of $690.52 per month since November 1, 1982. Osterhout would not have qualified for this pension if the period from March 1970 to April 1972 had been deleted, a period of time in which he was not actually engaged in driving a truck.
 
 
 12
 In holding that Transervice was estopped from denying that Osterhout was covered by the collective bargaining agreement for the full ten years, the Magistrate found that Transervice had made intentional misrepresentations and concealments upon which the Fund had detrimentally relied during its evaluation process. Our review of the Magistrate's application of equitable estoppel estoppel presents mixed questions of fact and law. Thus, the Sixth Circuit has held:
 
 
 13
 Whether facts proven are legally sufficient to constitute an estoppel is a question of law fully reviewable by this court. Prize Steak Products, Inc. v. Bally's Tom Foolery, Inc., 717 F.2d 367, 370 (7th Cir. 1983). However, because determinations concerning the specific elements of estoppel are questions of fact, Shamrock Development Co. v. City of Concord, 656 F.2d 1380, 1386 (9th Cir. 1981), the district court's factual findings must be upheld unless clearly erroneous.
 
 
 14
 Teamster's Local 348 Health and Welfare Fund v. Kohn Beverage Co., 749 F.2d 315, 319 (6th Cir. 1984).
 
 
 15
 We also recognize, as did the Magistrate, that job classification, not union membership, is controlling in a determination of whether an employee is working under the terms of a collective bargaining agreement. Central States Southeast & Southwest Areas Pension Fund v. Central Transport, Inc., 698 F.2d 802 (6th Cir. 1983).
 
 
 16
 In Kohn Beverage, this court stated: 'Estoppel requires a representation, to a party without knowledge of the facts and without the means to ascertain them, upon which the party asserting the estoppel justifiably relies in good faith to his detriment.' 749 F.2d at 319 (citations omitted, emphasis added). Furthermore, the party claiming estoppel must have reasonably relied 'in that the party claiming the estoppel did not know nor should not have known that its adversary's conduct was misleading.' Heckler v. Community Health Services of Crawford, Inc., 104 S.Ct. 2218, 2223 (1984). We must determine whether the estoppel standard applied by the Magistrate differs from the Kohn Beverage standard.
 
 
 17
 The requirement that the party to be estopped make a representation to the adverse party has been sufficiently established in this case, because Transervice stated that Osterhout 'drove [a] truck' during the full period of his employment at Transervice, and also represented Osterhout's failure to pay union dues during the first two years as the basis for its failure to contribute to the Fund. Both of these representations were key factors in the Fund's decision to allow Osterhout retirement benefits.
 
 
 18
 The magistrate also found that the Fund reasonably relied on Transervice's representations about Osterhout's status as a driver for the ten year period in deciding to award retirement benefits. Transervice contends that since the Fund billed Transervice for the two years of delinquent contributions after receipt of the union's statement that Osterhout was covered by the collective bargaining agreement, it must have relied exclusively upon the information obtained from the union and not upon the representations made by Transervice. As the Magistrate noted, however, the Fund twice questioned Transervice about Osterhout's status after the union made its statement and before the pension was actually awarded to Osterhout. A Fund director admitted that the award of benefits to Osterhout was based upon information received from the union and Transervice. The record shows that the Fund relied on both the union's and Transervice's mistaken representations as to Osterhout's status in making its evaluation and decision to award a pension.
 
 
 19
 A more difficult issue is posed by the magistrate's determination that the Fund's reliance upon Transervice's erroneous statements was justifiable or reasonable. In finding the Fund's reliance to be reasonable, the magistrate stated:
 
 
 20
 It was understandable that it would look to the defendant for information about Osterhout's employment history, as there is no other means of verifying the eligibility of applicants. It is also understandable that it would, of necessity, rely upon the responses received from the employer, as it had no other source of reliable information.
 
 
 21
 Although the fund made at least four inquiries about either the work performed by Mr. Osterhout or the company's reasons for not making contributions, it was never apprised of the true facts prior to making the decision to award him a pension. If on any one of these occasions the company had formulated a response which put the plaintiff on notice that Mr. Osterhout had not been covered by the collective bargaining unit, the facts would, in all likelihood, have been disclosed before the pension was awarded. But that did not occur; and it did not occur as a direct and predictable result of the company's responses, rather than as a consequence of any oversight, inaction, or inattention on the part of the fund regardings [sic] its obligations and responsibilities.
 
 
 22
 The real issue in this case is whether there are sufficient factors indicating that the Fund did not act reasonably under all the circumstances based on the information available to it. See Meyers v. Moody, 693 F.2d 1196, 1208 (5th Cir. 1982). The confusion caused by Transervice's insistence that Osterhout should not receive pension benefits because he was not a union member during the relevant twenty-six months and the statement by the union that Osterhout was a member of the collective bargaining unit during that same time period should have caused the Fund to realize that there was a serious problem about this period.
 
 
 23
 Since a decision to permit benefits depletes the fund for qualifying individuals the Fund had a duty to investigate this apparent confusion and conflict. If the Fund had made a more detailed probe, benefits would have been denied and the employee whose service did not actually qualify would not have received benefits. The Fund should have been alerted to a question about Osterhout's coverage under the collective bargaining agreement during that twenty-six month period in question because social security wage verification documents showed that during the critical twenty-six month period, Osterhout received a salary. The Fund perhaps should have recognized that drivers, who received coverage under the collective bargaining agreement, are paid by the hour or by mileage, not on a salary. In fact, a Fund employee admitted that the type of payment made to an employee often merited further inquiry and put the Fund on alert in determining pension eligibility. Although this Fund employee could not clearly remember whether the discrepancy in Osterhout's case was questioned, the Fund has a continuing responsibility to protect the monies for deserving retirees only. It was not only Transervice which incorrectly advised of Osterhout's status, the union itself incorrectly advised that during the controverted time Osterhout was working under the terms of a collective bargaining agreement.
 
 
 24
 We cannot ascertain whether this evidence casting some doubt on the Fund's lack of due diligence in resolving Osterhout's true status as not covered by the collective bargaining agreement during the initial period of employment was adequately considered by the Magistrate since he made no reference to it. We cannot at this juncture characterize his findings as clearly erroneous, but we feel that the matter must be remanded for consideration as to whether the Fund's reliance on Transervice's misinformation was reasonable, taking into account other factors that may have alerted it to the problem, or that may have been the real basis for its action.
 
 
 25
 We REMAND also for further explanation as to the basis for the Magistrate's ultimate finding that Transervice 'intended, when it communicated the misinformation about Osterhout's employment history, that the plaintiff Fund would rely on that information when it reviewed Osterhout's application for benefits.' Did Transervice intend that the Fund would award benefits to Osterhout who was otherwise not qualified to receive them? It is also clear, in any event, that by reason of these unfortunate circumstances Osterhout, to the potential detriment of other qualified Fund beneficiaries, has received for some period of time pension benefits which he was not yet qualified to receive. The Fund was aware of this inequity after the filing of this suit at least by the time in 1984 that by stipulation it amended its cause of action under ERISA to include a claim of estoppel. It could by then have terminated the payments to Osterhout and limited the potential liability of the Fund and that of Transervice. We remand this matter, therefore, for further consideration of the facts and factors dealing with the reasonableness of the reliance by the Fund on Transervice's misinformation, and whether Transervice intended by that misinformation to cause benefits improperly to be paid to Osterhout. Finally, we REMAND for consideration or clarification as to whether the Fund has properly mitigated its claim for delinquent contributions, (even if correctly based on estoppel principles), interest and other costs in the form of damages against Transervice.
 
 
 26
 DeMascio, J. Dissenting.
 
 
 27
 The trustees of Central States Southeast and Southwest Areas Pension Fund (Fund) erroneously determined that Rollie Osterhout, an employee of Transervice Systems, Inc. (Transervice) was covered by the collective bargaining agreement and therefore entitled to pension benefits. The magistrate found that this erroneous determination 'rested in large part' upon information received from Transervice. Accordingly, the magistrate concluded that Transervice was estopped from denying liability for payments to the Fund for the period 1970-72, payments Transervice was not obligated to make on Osterhout's behalf under the terms of the collective bargaining agreement. In finding an estoppel appropriate the magistrate overlooks the trustees' fiduciary duty to ascertain the true facts, concluding instead that the trustees and the Fund justifiably relied on Transervice's transmittal identifying Osterhout as merely a 'driver.' I am persuaded that these findings are clearly erroneous and should be reversed with directions to dismiss the complaint. The majority, however, prefer to remand so the magistrate can further consider whether the Fund's reliance on the information furnished by Transervice was reasonable. Because I do not expect the magistrate to alter his erroneous perspective of the evidence, I believe that a remand for additional findings will be as productive as nailing jelly to a wall. Therefore, I respectfully dissent from that disposition.
 
 
 28
 The majority opinion fairly summarizes the evidence submitted before the magistrate. That evidence discloses that immediately upon receiving Osterhout's application for retirement benefits, the Fund sent Transervice a form entitled 'Verification of Employment.' Transervice filled in several blanks on this form identifying Osterhout as a 'driver' and specifying his period of employment as '2/3/70' to 'present'. The undisputed evidence at trial showed that Osterhout worked primarily as a dispatcher until April 1972, but that he did have limited driving duties during this period. This inadequate form did not require more specific responses.
 
 
 29
 When the trustees received this information from Transervice on December 2, 1980, they knew that a qualified applicant for benefits had to be a driver 'for transportation purposes' in order to be covered by the collective bargaining agreement. The 'Verification of Employment' form certainly did not inform the Fund whether Osterhout met this essential prerequisite and the Fund knew it had to obtain this information on its own or ask the essential question directly. Mr. Murtha, the pension fund director, admitted as much at trial:
 
 
 30
 Q. Is it your position, sir, or is it the position of the fund that if you are a truck driver, that makes you automatically a member of a collective bargaining agreement?
 
 
 31
 A. That's not the position of the fund. To get into the fund as I testified, is you have to be working under the terms of a contract that does call for contributions into the fund. . . . (App. p. 068.)
 
 
 32
 Even prior to mailing this form to Transervice, the Fund demonstrated that it relied upon the union in determining eligibility for retirement benefits. On September 22, 1980, the Fund received from the union a document entitled 'Affidavit of Service Under the Collective Bargaining Unit' correctly advising the Fund that Osterhout's relevant dates of service under the agreement were from '4/72 to 8/80.' Having the knowledge that Osterhout was not covered by the agreement for the period 1970-1972, the Fund nevertheless made further inquiry from Transervice who advised the pension director that they did not make pension contributions on Osterhout's behalf for the period 1970-72 because Osterhout was not a dues paying member of the union. Hence, the Fund knew that Osterhout did not fall under the terms of the collective bargaining agreement and could not therefore qualify for benefits. So, on March 11, 1981, one week before the Fund received this last response from Transervice, the trustees acted to deny Osterhout's application for benefits on the ground that he did not have the requisite years of covered employment. The denial specifically noted that Osterhout's years of credited service with Transervice commenced in 1972. (App. p. 038.)
 
 
 33
 From that point forward, Transervice had no part in the actions taken by the Fund. On May 15 of the same year, the Fund sent Local 20 a letter specifically inquiring whether Osterhout was covered by the collective bargaining agreement for the period 1970-1972. On July 13, 1981, the president of Local 20 advised the Fund that Osterhout was indeed covered by the agreement and that Transervice owed contributions for that period. (App. p. 227.) Three weeks after receipt of this response from the union, the Fund issued a 'Retroactive Contributory History Changes' in which it clearly relied upon the union's representation:
 
 
 34
 Local union 20 feels that Transervice Systems owes contributions from 1970 through April 2, 1972 as Mr. Osterhout was working under the terms of the collective bargaining agreement. (App. p. 224.)
 
 
 35
 The Fund received no other correspondence from either the union or Transervice during the interim three-week period between the union's response to its letter and the Retroactive History Change. This sudden turnabout establishes beyond doubt that the Fund relied solely upon the information submitted by the union in finding that Osterhout had sufficient years of credited service. The Fund admitted as much at trial when its pension group director specifically testified that if 'the local advises us that he was working under the terms of the contract we would give him credit.' (App. p. 068.) Reliance on the union is all the more obvious since the Fund had already denied Osterhout benefits after receiving Transervice's response that Osterhout was a 'driver.' A finding that there was justifiable reliance upon the information from Transervice is clearly erroneous when there was obviously no reliance at all. If there was no reliance, a finding of estoppel is likewise clearly erroneous.
 
 
 36
 It was within the power of the Fund to clear up the confusion, if any, caused by Transervice's non-specific responses. In my view, the trustees were negligent in not taking the simple steps required to do this. The Fund never specifically asked Transervice whether Osterhout was covered by the collective bargaining agreement for the period 1970-72 as it did with the union. Had it done so, the Fund would have learned that Osterhout without question was not covered by the collective bargaining aggreement and therefore not entitled to benefi s. Transervice's response that Osterhout was not entitled to benefits because he was not a union member should have put the Fund on notice that chances were Osterhout was not covered by the collective bargaining agreement and cautioned the trustees against relying on obviously inadequate information.
 
 
 37
 I am convinced that the responses made by Transervice cannot relieve the Fund of its fiduciary duty to ascertain the true facts. No doubt when the trustees learned of their own negligence, they decided that the best defense was a good offense, so they brought suit against Transervice. I believe they sued the wrong party. To require this family owned small business to pay contributions it was not obligated to pay is to me simply unfair.
 
 
 
 *
 The Honorable Robert E. DeMascio, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 The award amounted to $9,028.90 and the specific awards included $2,258.91 for delinquent contributions and interest; $446.21 in liquidated damages; $4,775.00 as attorneys' fees; $747.02 for attorneys' expenses; and $801.76 as attorneys' travel and lodging expenses
 
 
 [2]
 Federal subject matter jurisdiction was founded upon Sec. 301(a) of the Labor Management Relations Act of 1947, (29 U.S.C. Sec. 185(a)), Sec. 502 of the Employment Retirement Income Security Act of 1974, ('ERISA') (29 U.S.C. Sec. 1132), and Sec. 306 of the Multiemployer Pension Plan Amendments Act of 1980 ('MEPPAA') (29 U.S.C. Sec. 1145)